UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


GREGORY LAMONT MEANS                          CIVIL ACTION

VERSUS                                        NO. 09-8749

U.S.D.C. DISTRICT JUDGE KURT                  SECTION "F" (2)
ENGELHARDT ET AL.


## <u>ORDER ON MOTIONS TO AMEND</u><br><u>AND REPORT AND RECOMMENDATION</u>

Plaintiff, Gregory Lamont Means, is a prisoner currently incarcerated in the B.B.

"Sixty" Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.  He filed this

complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against United

States District Judge Kurt Engelhardt, the State of Louisiana, and Jeffrey Travis and

James LeBlanc, the Director and Secretary, respectively, of the Louisiana Department

of Corrections ("DOC").  His written submissions complain extensively about the

manner in which this court has handled his prosecution of another civil action he has

filed, which remains pending in this court, "Means v. Seal et al.," C.A. No. 06-5703

"N"(5).  He also alleges that, while incarcerated in Rayburn, he has been subjected to

various acts of retaliation in response to his pursuit of that other civil action.  He seeks

monetary damages in the amount of $2.6 million, Record Doc. No. 1 (Complaint at ¶ V),

and transfer to another prison facility.

By its previous orders, the court has already dismissed Means's claims against both Judge Engelhardt and the State of Louisiana on immunity grounds. Record Doc. Nos. 5 and 6. Thus, only his claims against the individual state officers remain for evaluation.

Plaintiff filed a Motion to Amend, Record Doc. No. 9, and a Motion for Leave to File Exhibits, Record Doc. No. 10. Both motions were granted to the extent they sought to file exhibits and both were deferred until after the hearing scheduled for April 15, 2010, to the extent they sought to amend plaintiff's complaint. Record Doc. No. 11.

On April 15, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Phyllis Glazer, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Although plaintiff's written submissions in this matter are voluminous, most of his submissions relate to the same allegations and claims against different persons that remain pending in his previously filed lawsuit. At the outset of the <u>Spears</u> hearing, I explained to Means that those same claims would not be permitted to be duplicatively pursued in this case, 28 U.S.C. § 1915(e)(2)(B)(i), and that one purpose of the hearing

was to discern what distinct and different claims, if any, he might be asserting in this case.

Means testified that he is currently incarcerated in Rayburn based upon a parole violation. He stated that he had been on parole for a previous conviction for accessory after the fact to first degree murder and armed robbery. He testified that his anticipated prison release date is May 2011.

Asked what claims he seeks to assert in this case, he stated that he wishes to sue James LeBlanc, Secretary of the DOC; Jeffrey Travis, a DOC headquarters director; and "the other tort defendants here at Rayburn Correctional Center, which are the defendants named in the previous action that are pending with Judge Engelhardt." Asked what claims he seeks to assert against these defendants in this case, Means testified that, shortly after the events which allegedly occurred on April 19, 2006 at Rayburn that are the subject of his previous lawsuit, Baton Rouge DOC headquarters director Jeffrey Travis came to Rayburn to serve as Chief Warden, and Means explained to him on several occasions that he had been beaten on April 19, 2006 by the same "tort defendants" named in his previous case. He alleged that Travis took no disciplinary action of any kind against the officers who are defendants in his previously filed case and who had beaten and "homosexually victimized" him. He estimated that he brought the claims he had made against the other officers to Travis's attention at some time in 2007,

but that Travis took no disciplinary, termination, suspension or other action against the officers.

Means stated that he also wishes to assert in this case the same claims he has asserted in the case pending before Judge Engelhardt, and he wishes to bring his claims against Travis together with his previously asserted claims. As to Secretary LeBlanc, he alleged that LeBlanc also did nothing in his capacity as supervisor over DOC facilities to address the claims Means has asserted against the officers that are pending in the case before Judge Engelhardt. He clarified that his claim against Secretary LeBlanc in this case is similar to the claim he seeks to assert against Director Travis in this case.

Asked whether he asserts a claim of retaliation in this case against the officers who are defendants in his previously filed case, Means confirmed that he wishes to assert a retaliation claim. During his testimony, I directed Means to the written allegations contained on page 7 of his written statement of facts supporting his claims, Record Doc. No. 8, and he confirmed that the three incidents described in those written allegations constituted the factual basis of his retaliation claim. Specifically, his written submissions described the following three alleged incidents of retaliation, which Means expanded upon during his testimony.

First, he alleged that on July 20, 2008, Lt. Ronnie Seal, a defendant in the case pending before Judge Engelhardt, "held a butchers knife up to the plaintiff's face to scare

plaintiff off civil actions."  Record Doc. No. 8 at p. 7.  He confirmed this allegation during his testimony and he characterized it as one of the acts of retaliation he alleges in this lawsuit.

Second, Means alleged that, on that same date, July 20, 2008, Sgt. Douglas Brooks, another defendant in the case pending before Judge Engelhardt, offered inmate Willie Davis $60 to kill Means.  Id.  Plaintiff confirmed this allegation during his testimony and he characterized it as another act of retaliation that he alleges in this lawsuit.  He testified that he found out about the threat from Davis, who was his cellmate.

Third, plaintiff alleged that, in May 2006, Lt. Donnie Seal, the twin brother of Ronnie Seal, twice encouraged another inmate, Raymond Ostreicher, to assault him.  Id. During his testimony, Means stated that he was placed in a cell with Ostreicher and attacked twice by that inmate "between May the 16th and I'm going to say May 20th" in 2006. Means characterized Ostreicher as "a mental patient and a trouble-maker" and said that statements concerning these incidents were submitted to the court in connection with his prior case.  He described this incident as a "conspiracy to commit murder" in retaliation for his filing of the prior lawsuit.

Means testified that, in addition to the three incidents of alleged retaliation described above, he was subjected to another incident of retaliation at Christmas time in either 2006 or 2007.  He testified that he was awakened in his cell by Lt. Stedman, who

told him that a nurse wanted to talk to him.  He alleged that his cell had been shaken down two days earlier and many of his possessions had been taken.  Means testified that Stedman and the nurse told him that his family members had called to warn them that Means was about to commit suicide.  Means stated that he did not tell anyone in his family that he was going to commit suicide, so he concluded "that I think . . . that they were gonna try to kill me," but he conceded that no attempt on his life was made at that time.

In summary, Means concluded that all of the foregoing incidents were in retaliation for having filed the lawsuit that remains pending before Judge Engelhardt in this court.  He alleged that additional acts of retaliation continue to occur, and he asked to be transferred to another prison facility, specifically Hunt Correctional Center.  Asked to describe specifically the additional acts of retaliation, he testified that he has been receiving disciplinary write-ups from the Seal brothers based upon alleged violations of prison rules.

Plaintiff stated that, in one instance, Lt. Ronnie Seal had him moved to a cell located "between two troublemaker inmates, very racist, . . . every morning, every night, I wake up with 'nigger' this, 'nigger' that, 'porch monkey,' . . . and this goes on all day, every day."  He said that, as recently as one week before the telephone conference, he had been involved in a "verbal confrontation" with these two inmates, after which he

received a writeup for arguing from Lt. Ronnie Seal.  He stated that, as a result, he received disciplinary writeups for arguing and aggravated disobedience and for having contraband toothpaste.  He testified that he went to a disciplinary hearing, where he had an opportunity to speak on his own behalf, and that he received eight weeks of cell confinement as a penalty.  He conceded that he had been involved in the argument and had possessed the toothpaste.

He also alleged that he was taken to the prison barber shop for a haircut and a shave on March 24, 2010.  He stated that another inmate named Walter Cox, who has hepatitis, HIV and AIDS, was in the barber's chair.  Plaintiff testified that, when Cox was finished with his shave, Lt. Donnie Seal "made me get . . . in the barber's chair immediately."  Means complained that he requested "to get blood work done" immediately after this incident, but he could not have his blood work done until the night before the telephone conference.  He complained that this was an act of retaliation, and he said that he has not yet received the results of his blood test.

In a further effort to clarify Means's claims, I directed him to a handwritten attachment to an "Administrative Remedy Procedure" ("ARP") form attached to his original complaint, in which he complained about a loss of good time credits.  Record Doc. No. 1.  In that attachment, he complained through the ARP about "excessive

retaliation R.V.R. disciplinary write-ups since . . . April 19, 2006," allegedly resulting in "forfeiture and good time loss total of (924) days." Id.

Asked to describe the procedure involved in the loss of good time credits for each disciplinary write-up, Means testified that he first received "a written write-up" stating the charge, then made an appearance before a disciplinary hearing board held at the prison before "maybe about two Rayburn correctional officers." He testified that a hearing occurred, where he was given an opportunity to speak in his own defense, along with the provision of inmate counsel. He testified that there is an appeal process after the board makes its decisions.

Means confirmed that he attached to his complaint an ARP form, "First Step Response Form (First Step Respondent)" dated August 20, 2009 and signed by a prison official, which stated in pertinent part: "Your forfeiture of good time has been checked and the only adjustment that needed to be made was on your total you must serve. An error was found in the calculation of the forfeiture, so therefore it was (sic) been corrected. Your updated MPR is attached. You are not entitled to any further adjustments to your forfeiture at this time." Id. Means said that one to three days of lost good time credit were restored to him as a result of this process. He estimated that he had gone to about 20 disciplinary hearings from 2006 through the present in which he lost good time. He confirmed that he went through the same procedure each time of

receiving a write-up and a hearing, followed by the opportunity to appeal, first to the Rayburn board and then a second step with the DOC through defendants Travis and LeBlanc. He testified that he never received any relief through the appeals process, except for the one instance described above in which a few days of his lost good time credit were restored.

Means testified that he currently remains incarcerated only because he lost his good time credit through the various disciplinary matters and that he would have been released in 2008 if he had not forfeited his good time credits through the prison disciplinary process, which he alleged were in retaliation for having filed the civil case that remains pending before Judge Engelhardt. He confirmed that he is represented by appointed counsel in that case.

In conclusion, Means requested an injunction transferring him from Rayburn "for my well-being and my safety" and because "I feel that my life is in jeopardy here [at Rayburn]." He requested a prison location closer to the federal court in New Orleans.

On cross-examination, Means said that his attorney in his other case pending in this court had already brought to the court's attention in that case the alleged July 2008 incidents involving Lt. Seal and the knife and Sgt. Brooks' offer of $60 to another inmate. He reiterated his request for a court order transferring him to another facility, specifically Hunt Correctional Center.

## ORDER ON MOTIONS

The court previously deferred plaintiff's Motion to Amend, Record Doc. No. 9, and Motion for Leave to File Exhibits, Record Doc. No. 10, to the extent the motions sought to amend his complaint. Record Doc. No. 11. **IT IS ORDERED** that both motions are **DENIED**, for the following reasons.

Means filed the instant action as a pauper under 28 U.S.C. § 1915. An in forma pauperis complaint shall be dismissed if it is found to be malicious. 28 U.S.C. § 1915(e)(2)(B)(i). Duplicative and repetitive lawsuits are malicious for purposes of Section 1915. Potts v. Texas, 354 F. App'x 70, 71 (5th Cir. 2009) (citing Pittman v. Moore, 980 F.2d 994, 994-95 (5th Cir. 1993); Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988)); McBarron v. Fed. Bureau of Prisons, 332 F. App'x 961, 963 (5th Cir. 2009).

In this case, plaintiff's motions to amend his complaint must be denied under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1) because the amendments are malicious and repetitive of the same claims asserted in another case filed in this court. Specifically, plaintiff's assertion in this case of claims against the same defendants, based on an alleged assault by another inmate and an assault by prison officials in April 2006, are duplicative of the same claims he has asserted in "Means v. Seal et al.," C.A. No. 06-5703 "N"(5), which remains pending and under active consideration in this court.

Plaintiff's attempt to reassert in this case the same claims concerning prison officials' failure to protect him against assault by another inmate and an alleged assault by prison officials, which have already been asserted in his earlier filed case in this court, must be rejected in this case as duplicative and malicious. Accordingly, the motions to amend are denied.

## SCREENING ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

## II.    CLAIMS AGAINST TRAVIS AND LEBLANC

Means makes no claim that James LeBlanc, Secretary of the DOC, and Jeffrey Travis, a DOC headquarters director, were personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, these defendants cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in their employ or under their supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150,

161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that defendants were personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which defendants LeBlanc and/or Travis can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

Means has not alleged that any of his constitutional rights were violated as a result of these defendants' policies.  He alleged that he explained to Travis on several occasions in 2007 that he had been beaten on April 19, 2006 by the same "tort defendants" named in his previous case, but that Travis took no disciplinary action of any kind against those officers.  As to Secretary LeBlanc, Means alleged that LeBlanc also did nothing in his

capacity as supervisor over DOC facilities to address the claims that Means has asserted against those same officers, which are pending in the case before Judge Engelhardt.

These allegations plainly assert a negligence claim, not a claim of a civil rights violation cognizable under Section 1983. Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

In a number of contexts, the Fifth Circuit has determined that allegations amounting to negligence cannot support a Section 1983 claim. See Hemphill v. Hamilton, No. 09-50684, 2010 WL 2465076, at *1 (5th Cir. June 15, 2010) (allegations that pretrial detainee was injured when he slipped and fell on standing rainwater, "at most, constitute negligence on the part of the guards," and were insufficient to impose supervisor liability); Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (Negligence is insufficient to support a failure to protect claim under Section 1983.); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Means's allegations concerning these defendants' negligent failures to promulgate appropriate policies and to train, supervise and discipline their officers properly do not state a claim for a violation of constitutional rights. LeBlanc and Travis cannot be liable under Section 1983 for losses resulting from alleged acts of negligence. Accordingly, plaintiff's claims against these defendants must be dismissed.

III.    RETALIATION

Means asserts that he was subjected to disciplinary action in retaliation for his pursuit of another civil action in this court against various officials at Rayburn, arising out of an alleged failure to protect him from harm by another inmate and an alleged beating by prison guards in April 2006. That action, C.A. No. 06-5703 "N"(5), remains pending in this court before Judge Engelhardt.

Plaintiff's allegations attempt to state a claim of retaliation for exercising his First Amendment right of access to the courts. Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about a guard's misconduct. Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

(A)    Statute of Limitations/Prescription

Construing his submissions broadly, Means may be asserting Section 1983 claims that defendants in the instant case either retaliated against him or failed to protect him

against retaliation by the defendants in his other pending lawsuit in this court, C.A. No. 06-5703, with respect to four discrete incidents that occurred in May 2006, around Christmas in 2006 or 2007, and on July 20, 2008. Those specific claims are barred by the applicable statute of limitations, or the concept of "prescription" under analogous Louisiana law. The district court may raise the limitations defense sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915. Wilke v. Meyer, 345 F. App'x 944, 945 (5th Cir. 2009), cert. denied, 130 S. Ct. 2346 (2010); Lopez-Vences v. Payne, 74 F. App'x 398, 398 (5th Cir. 2003); Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993).

Although Section 1983 has no statute of limitations, the Louisiana prescription statute is applicable to suits in federal court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.

Duplessis v. City of New Orleans, No. 08-5149, 2009 WL 3460269, at *4 (E.D. La. Oct. 26, 2009) (McNamara, J.) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994); Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)); accord James v. Branch, No. 07-7614, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009) (Duval, J.) (citations omitted).

Federal law determines when a Section 1983 claim accrues. <u>Jacobsen</u>, 133 F.3d

at 319.

> For purposes of calculating the limitations period, a § 1983 cause of action
> accrues when the plaintiff knows or has reason to know of the injury which
> forms the basis of his action. The Supreme Court has held that prescription
> begins to run at the point when "the plaintiff can file suit and obtain relief."

<u>Duplessis</u>, 2009 WL 3460269, at *5 (quoting <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007))

(citing <u>Jacobsen</u>, 133 F.3d at 319; <u>Gonzales v. Wyatt</u>, 157 F.3d 1016, 1020 (5th Cir.

1998)); <u>accord</u> <u>Dixon v. Cooper</u>, 260 F. App'x 728, 729 (5th Cir. 2007); <u>Piotrowski v.

City of Houston</u>, 51 F.3d 512, 516 (5th Cir. 1995). Determination of when plaintiff knew

or should have known of the existence of a possible cause of action has two factors:

"(1) [t]he existence of the injury; and (2) causation, that is, the connection between the

injury and the defendant's actions." <u>Id.</u>; <u>accord</u> <u>Dixon</u>, 260 F. App'x at 729.

Plaintiff claims that defendants retaliated against him in four specific incidents:

(1) in May 2006, Lt. Donnie Seal twice encouraged another inmate, Ostreicher, to assault

Means, and Ostreicher attacked plaintiff twice between May 16 and May 20, 2006; (2) at

Christmas time in either 2006 or 2007, Lt. Stedman and a nurse told Means that his

family members had called to warn them that he was about to commit suicide, and Means

thought that the jail officials were going to try to kill him, although they did not make

any attempt; (3) on July 20, 2008, Lt. Ronnie Seal held a knife up to plaintiff's face to

scare him away from pursuing his pending civil action; and (4) on the same date, Sgt. Brooks offered another inmate $60 to kill Means.

Plaintiff's testimony also reveals that May 20, 2006 was the latest date on which the first act of alleged retaliation could have occurred. As to the second incident that allegedly happened at "Christmas time" of 2006 or 2007, giving Means the benefit of the doubt that "Christmas time" might extend until the last day of December and that the incident occurred in the later of the two years, December 31, 2007 was the latest date on which that incident could have occurred. The last two incidents allegedly occurred on July 20, 2008. Plaintiff had one year from the date of each of the four incidents within which to file suit concerning them. Thus, he had until May 20, 2007 to file suit as to the first incident; until December 31, 2008 to file suit as to the second incident; and until July 20, 2009 to file suit as to the last two incidents.

The date when the Clerk of Court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987). However, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the prisoner for delivery to the court is considered the time of filing for limitations purposes. United States v. Petty, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); Stevenson v.

Anderson, 139 F. App'x 603, 604 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).

In this case, the earliest date on which prison officials could have received Means's complaint for delivery to this court is November 25, 2009, when he signed it.[2] Complaint, Record Doc. No. 2, at p. 8. Plaintiff's complaint is therefore considered to have been filed and this action commenced on November 25, 2009 for limitations purposes.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law. Lopez-Vences, 74 F. App'x at 398; Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Gartrell, 981 F.2d at 257.

The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected

---

[2]The complaint was tendered to the Clerk of Court for filing in this court on December 7, 2009 and was formally filed on January 19, 2010, after the court granted plaintiff's motion for leave to proceed in forma pauperis. Record Doc. Nos. 1, 2, 3.

proceeding which prevented the creditor from suing or acting, (3) if the debtor himself

has done some act effectually to prevent the creditor from availing himself of his cause

of action, and (4) if the cause of action is not known or reasonably knowable by the

plaintiff, even though his ignorance is not induced by the defendant. Dominion Explor.

& Prod. Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4th Cir. 2007) (citing Wimberly

v. Gatch, 635 So. 2d 206, 211 (La. 1994); Plaquemines Parish Comm'n Council v. Delta

Dev. Co., 502 So. 2d 1034, 1054-55 (La. 1987)).

Thus, the "doctrine of contra non valentem recognizes that in limited

circumstances prescription should not run if good cause exists as to why plaintiff would

have been unable to exercise or was lulled into not exercising a cause of action when it

first became exigible." Pracht v. City of Shreveport, 830 So. 2d 546, 551 (La. App. 2d

Cir. 2002).

Plaintiff testified that the first incident of alleged retaliation occurred no later than

May 20, 2006, the second no later than "Christmas time" in 2007 and the last two

incidents on July 20, 2008. It is clear from his own testimony that Means knew no later

than each of those dates of the existence of his injuries and the connection between those

injuries and the claimed retaliation. Thus, Means asserts claims of retaliation based upon

discrete events that occurred more than one year before November 25, 2009, the date on

which his instant complaint is deemed filed under the mailbox rule. Under these

circumstances, his claim against these defendants must be dismissed due to expiration of the one-year statute of limitations.

Plaintiff has not asserted any cause or condition that prompts application of the doctrine of contra non valentem. His complaint and testimony establish that, more than one year prior to his filing of the instant action, even under the liberal "mailbox rule," Means knew of defendants' allegedly unconstitutional actions in each of the four discrete incidents and his resulting injuries. The record establishes no condition that might have tolled the statute of limitations or upon which the doctrine of contra non valentem might be applied. In short, because plaintiff did not commence his claims of retaliation or failure to protect him from retaliation within the required one-year limitations period after he knew or should have known of the alleged constitutional violations, these claims under Section 1983 are time-barred and must be dismissed.

(B)    Later Retaliatory Acts

As to the alleged acts of retaliation that occurred within one year before November 25, 2009, the date when the instant action was deemed filed in this court, and which are not prescribed, the court applies established Fifth Circuit law concerning prisoner retaliation claims. That law has undergone substantial evolution in recent years. It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff

for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred. With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods v. Smith, 60 F.3d 1161, 1164-66 (5th Cir. 1995)) (quotations and additional citations omitted).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment. Defendants in that case had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and to the warden of the prison. The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted). The Fifth Circuit warned that "trial courts must carefully scrutinize these claims." Id.

24

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . . The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

<u>Id.</u> (citations and quotation omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

In <u>Morris v. Powell</u>, 449 F.3d 682 (5th Cir. 2006), a recent case of first impression in the Fifth Circuit, the appeals court addressed "[w[hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Id.</u> at 684. The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from

25

further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

.... Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .

With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim. Furthermore, the alleged retaliatory acts must be more than de minimis, which means that the acts must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Thus, the law in the Fifth Circuit

is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. Officials likewise may not retaliate against an inmate for using the [prison] grievance system. A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. The inmate must show more than his personal belief that he was the victim of retaliation. Mere conclusory allegations of retaliation are not enough. In order to proceed on his claims, a plaintiff must show that the retaliatory adverse act [was] more than a de minimis act.

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (Craven, M.J.) (citing Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25

(5th Cir. 1999); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988); Hilliard v. Board of Pardons & Paroles, 759 F.2d 1190, 1193 (5th Cir. 1985); Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir.), amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982); Campbell v. Beto, 460 F.2d 765, 768 (5th Cir. 1972)), report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (Folsom, J.).

The Fifth Circuit has upheld dismissals of retaliation claims based on allegedly false disciplinary charges when the inmate either admitted or was found guilty of having committed the disciplinary infraction. Sylvester v. Cain, 311 F. App'x 733, 735 (5th Cir. 2009); Cross v. Dretke, 241 F. App'x 203, 204 (5th Cir. 2007); Reeves v. Wood, 206 F. App'x 368, 370 (5th Cir. 2006); Brown v. Craven, 106 F. App'x 257, 259 (5th Cir. 2004).

In the instant case, Means admitted that he engaged in the conduct with which he was charged in the most recent disciplinary proceeding, i.e., arguing, aggravated disobedience and possessing contraband toothpaste. As to his complaints about the other disciplinary proceedings against him since April 2006 and his complaint that he was required to sit in a barber's chair immediately after another inmate who had hepatitis, HIV and AIDS and that his request for immediate blood work was not granted, Means

has alleged only his personal, conclusory belief that he was the victim of retaliation.  He has failed to allege any <u>facts</u> showing that any defendant possessed a retaliatory motive with regard to any of these events.  Moreover, it is clear that the alleged retaliatory acts have not deterred him from filing and pursuing the instant lawsuit or from pursuing his other civil rights action that is pending before Judge Engelhardt.

Because Means admits being guilty of the infraction for which he was found guilty in one instance and because he has neither shown nor alleged that the disciplinary proceedings and/or the barber's chair incident were capable of deterring a person of ordinary firmness from further exercising his constitutional right of access to the court, Means cannot show either a retaliatory motive for the actions or that, but for a retaliatory motive, the actions would not have occurred.  <u>See</u> <u>Leggett v. Comer</u>, 280 F. App'x 333, 336 (5th Cir. 2008) (retaliation claim was frivolous when inmate failed to show that "his property would not have been missing but for his letter-writing about [prison] officials, and [that a] retaliatory intent motivated the lack of adequate inventories and storage of his property"); <u>Brown</u>, 106 F. App'x at 259 ("Because items that cannot be shown to have a legitimate source are considered contraband, Brown cannot show that, but for the alleged retaliatory motive, his undocumented 'contraband' would not have been seized during a routine cell search.").

Plaintiff's retaliation claim in this case alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts. He has not shown the existence of either a retaliatory motive or causation. In addition, he suffered no actual injury as a result of being sentenced to cell confinement based on a finding that he was guilty of the disciplinary charge for which he admits that he was actually guilty. Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e).

IV.    MALICIOUS / DUPLICATION

Plaintiff has filed the instant action as a pauper under 28 U.S.C. § 1915. An in forma pauperis complaint shall be dismissed if it is found to be malicious. 28 U.S.C. § 1915(e)(2)(B)(i). Duplicative and repetitive lawsuits are malicious for purposes of Section 1915. Potts v. Texas, 354 F. App'x 70, 71 (5th Cir. 2009) (citing Pittman v. Moore, 980 F.2d 994, 994-95 (5th Cir. 1993); Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988)); McBarron v. Fed. Bureau of Prisons, 332 F. App'x 961, 963 (5th Cir. 2009). A prisoner's in forma pauperis complaint that is frivolous, malicious or fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1). Wilke v. Meyer, 345 F. App'x 944, 945 (5th Cir. 2009), cert. denied, 130 S. Ct. 2346 (2010).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), because it is in part malicious and repetitive of the same claims asserted in another case filed in this court. Specifically, plaintiff has asserted in this case the same claims against the same defendants, based on an alleged assault by another inmate and an assault by prison officials in April 2006, which he has already asserted in the case pending before Judge Engelhardt, as well as the alleged incident of retaliation in May 2006 involving Lt. Donnie Seal's alleged encouragement of inmate Ostreicher to attack Means, and the two incidents of alleged retaliation in July 2008 involving Lt. Ronnie Seal and the knife and Sgt. Brooks's offer of $60 to another inmate to kill plaintiff, all of which he testified that his attorney has brought to the attention of Judge Engelhardt in the other case. Thus, these claims are apparently duplicative of the same claims he has asserted in "Means v. Seal et al.," C.A. No. 06-5703 "N"(5), which remains pending and under active consideration in this court.

Plaintiff's attempt to reassert in this case the same claims concerning prison officials' failure to protect him against assault by another inmate, an alleged assault by prison officials and retaliation against him by the defendants in his other lawsuit, which have already been asserted in his earlier filed case in this court, must be rejected in this case as duplicative and malicious.

V.     LOSS OF GOOD TIME CREDITS

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are

more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in Madison held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Madison, 104 F.3d at 768; accord Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008); Dixon v. Hastings, 117 F. App'x 371, 372 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000). In Hernandez and Madison, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. Hernandez, 522 F.3d at 563; Madison, 104 F.3d at 768.

Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 484. The Supreme Court has held that solitary confinement in a "Supermax" facility imposes an atypical and significant hardship that creates a liberty interest in avoiding such a placement when all of the following factors are taken together: almost all human contact, including cell to cell conversation, is prohibited; the light is on for 24 hours per day; exercise is for 1 hour per day, but only in a small indoor room; the placement is indefinite

and is reviewed just annually; <u>and</u> placement disqualifies an otherwise eligible inmate from parole consideration. <u>Wilkinson</u>, 545 U.S. at 223-24. In addition, the Supreme Court intimated in <u>Sandin</u> that prison disciplinary proceedings resulting in the loss of good time credit may result in an "atypical and significant hardship" implicating due process concerns because they affect the duration of the inmate's imprisonment. <u>Id.</u> at 479-84. Without specifically addressing <u>Sandin</u>, the Fifth Circuit held in a case involving the Texas good time statute that prison disciplinary action that results in an inmate's loss of good time credits must be accompanied by certain procedural safeguards of the type described in the pre-<u>Sandin</u> Supreme Court decision in <u>Wolff</u>. <u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1080 (5th Cir. 1997). Similarly, in <u>Madison</u>, the Fifth Circuit stated that a prisoner's "loss of 30 days good time credit calls for a more careful analysis" of applicable due process principles. <u>Madison</u>, 104 F.3d at 768.

In <u>Wolff</u>, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings. <u>Wolff</u>, 418 U.S. at 556. Nevertheless, the <u>Wolff</u> Court held that prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. <u>Id.</u>

In the instant case, Means's testimony and his written submissions establish that he received various kinds of punishment for alleged disciplinary violations, including loss of good time credits and eight weeks of cell confinement. Except for his loss of good time credits, none of these punishments constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process were required. Sandin, 515 U.S. at 484; Madison, 104 F.3d at 768; see Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010) (citing Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."), petition for cert. filed, (U.S. May 8, 2010) (No. 09-10742); Hernandez, 522 F.3d at 563 (distinguishing the "extreme conditions" described in Wilkinson and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); Dixon, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); Payne v. Dretke, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause"). No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

Only Means's allegation that he was sentenced to a loss of 924 days of good time credit after he went through approximately 20 disciplinary proceedings since April 2006, at least some of which he alleges were retaliatory and therefore presumably based on false charges, raises due process concerns. Means's testimony establishes, however, that even as to this claim, he received adequate due process under the <u>Wolff</u> standards. As noted above, <u>Wolff</u> does <u>not</u> require that prison disciplinary proceedings include "the full panoply of rights" provided in criminal prosecutions.

Plaintiff testified that he received written charges against him in advance of each disciplinary hearing and that he was given an opportunity to speak in his own defense. He was also provided with an appeal process, which he employed. Under these circumstances, Means received adequate due process in connection with the disciplinary charges against him, even to the extent that the proceedings resulted in his loss of good time credits. <u>Arceneaux v. Young</u>, No. 09-30456, 2010 WL 935365, at *1 (5th Cir. Mar. 16, 2010) (citing <u>Wolff</u>, 418 U.S. at 564-66). He therefore fails to state a due process claim for which he would be entitled to relief under Section 1983.

In addition, the case law is clear that an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. <u>Collins v. King</u>, 743 F.2d 248, 253-54 (5th Cir. 1984); <u>Freeman v. Rideout</u>, 808 F.2d

949, 952-53 (2d Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984).  In the instant case, Means does not dispute that he had disciplinary hearings each time.  His testimony establishes that the hearings were adequate under Wolff.  Thus, Means fails to state a claim that his due process rights were violated in his disciplinary proceedings.

VI.     TRANSFER TO ANOTHER FACILITY

Insofar as plaintiff seeks a court order transferring him to another facility, specifically Hunt Correctional Center, it is clear that a prisoner has no right of any kind springing from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another.  Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Fuselier v. Mancuso, 354 F. App'x 49, 49 (5th Cir. 2009) (citing Olim, 461 U.S. at 245; Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996)); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995).

Constitutionally protected liberty interests may be created not only by the Constitution itself, however, but also by state law.  Not every state statute creates a liberty interest protected by the Constitution and cognizable under Section 1983.  On the contrary, a state statute creates constitutionally protected interests only if it establishes that state officials must take mandatory, non-discretionary actions in connection with the

life, liberty or property of citizens. Olim, 461 U.S. at 249; Taylor v. Jagers, 115 F. App'x 682, 684 (5th Cir. 2004) (citing Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989)); Lathers v. Nelson Coleman Corr. Ctr., No. 10-128, 2010 WL 1489903, at *3 (E.D. La. Mar. 22, 2010) (Shushan, M.J.), report & recommendation adopted, 2010 WL 1485468 (E.D. La. Apr. 13, 2010) (McNamara, J.). Thus, state statutes that vest officials with broad discretion to carry out their official functions do not create constitutionally protected interests that may form the basis for an action under Section 1983. See Olim, 461 U.S. at 249-50 (Hawaii prison regulations vesting prison administrators with broad discretion concerning inmate placement and transfers create no liberty interest protected under the Due Process Clause); Merit v. Lynn, 848 F. Supp. 1266, 1267-68 (W.D. La. 1994) (Louisiana parole statute is broadly discretionary and creates no constitutionally protected liberty interest).

In the instant case, Means's claim that he is entitled to be housed in a prison facility other than the Rayburn Correctional Center is governed by the related Louisiana statutes, La. Rev. Stat. §§ 15:566(B) and 15:824(B), which set forth the circumstances under which prisoners convicted of state criminal offenses are to be sent to DOC facilities from parish jails, and the myriad exceptions under which they may remain in parish facilities. These statutes vest extremely broad discretion in the DOC officials who are responsible for the placement of state prisoners. As one Louisiana appellate court

stated, in interpreting La. Rev. Stat. § 15:824 and vacating the order of a trial judge who

attempted to require the DOC to remove convicted state prisoners from Orleans Parish

Prison to a DOC facility,

> [t]his statute clearly envisions that the Department of Corrections <u>may be</u> <u>unwilling or unable</u> to take physical custody of prisoners sentenced to hard labor. In such an event, the department is obligated to pay the local sheriff or jailer for the costs of keeping such a prisoner . . . . The legislature by these enactments has manifested a <u>clear intent to leave the physical</u> <u>placement of prisoners within the jurisdiction of the DOC alone</u>.

<u>State v. Sylvester</u>, 648 So. 2d 31, 33 (La. App. 4th Cir. 1994) (emphasis added); <u>accord</u>

<u>Oglesby v. Gusman</u>, No. 09-3593, 2009 WL 3254145, at *3-4 (E.D. La. Oct. 7, 2009)

(Vance, J.); <u>Andrews v. Belt</u>, No. 07-CV-1283, 2007 WL 3046130 (W.D. La. Oct. 2,

2007) (Kirk, M.J.), <u>aff'd</u>, 274 F. App'x 359 (5th Cir. 2008).

Thus, the State of Louisiana by its broadly discretionary statutes has <u>not</u> created

a protected liberty interest in being housed in a particular prison or being transferred

from the Rayburn Correctional Center to another facility. Means has no constitutional

right to be housed in a DOC prison or any particular facility, under either the

Constitution or state law. This claim is legally frivolous and fails to state a cognizable

Section 1983 claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___12th___ day of July, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.